PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MITSUBISHI CATERPILLAR FORKLIFT AMERICA INC., | ) ) ) | CASE NO. 1:10CV2696 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) ) | |
| MINNESOTA SUPPLY COMPANY, | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 9] |

On January 21, 2011, the above-entitled action was reassigned from Judge Donald C. Nugent to the undersigned pursuant to General Order 2011-4. Judge Nugent had previously scheduled the matter for a Case Management Conference ("CMC") on Wednesday, February 23, 2011, *see* Notice Scheduling CMC (ECF No. 13), which is now scheduled to held before the undersigned, *see* CMC Scheduling Order (ECF No. 16).

This action is before the Court upon Defendant Minnesota Supply Company's ("Minnesota Supply") Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3), 28 U.S.C. § 1406(a) and the "First-to-File" Rule; or, Alternatively, to Stay These Proceedings Pursuant to the "First-to-File" Rule (ECF No. 9), filed on December 21, 2010. The Court has reviewed the memorandum in support (ECF No. 10), Plaintiff Mitsubishi Caterpillar Forklift America Inc.'s ("Caterpillar") memorandum in opposition (ECF No. 14), and

defendant's reply memorandum (ECF No. 15).  For the reasons that follow, the Motion to Stay These Proceedings Pursuant to the "First-to-File" Rule is granted.

## I. Factual and Procedural Background

Caterpillar is engaged in the manufacture and sale of forklift trucks under the Cat® and Mitsubishi brands.  Minnesota Supply is a dealer engaged in the sale and service of forklift trucks in Minnesota and Wisconsin.  On June 15, 1993, Caterpillar and Minnesota Supply entered into a Sales and Service Agreement ("the Agreement") (ECF No. 1-1).  Under the Agreement, Minnesota Supply is an authorized dealer of Caterpillar for the sale and service of Cat® lift trucks.  In addition to purchasing Cat® lift trucks from Caterpillar for resale, lease or rental, Minnesota Supply has purchased from Caterpillar replacement parts for the service and repair of Cat® lift trucks.

As an authorized dealer, Minnesota Supply is able to purchase replacement parts from Caterpillar at a discount off list price, and it orders parts from Caterpillar when and as needed, either for inventory or for service of a specific Cat® lift truck.

After January 1, 2010, Caterpillar began offering to dealers lift trucks under the Cat® brand in Industrial Truck Association ("ITA") Class 1 that are manufactured in Germany by Jungheinrich Aktiengesellschaft ("Jungheinrich AG").  Class 1 forklift trucks are used primarily for material handling in warehouses and are electric-powered.  Prior to 2010, Caterpillar had been offering to dealers lift trucks under the Cat® brand in ITA Class 3 that also were manufactured in Germany by Jungheinrich AG.  Class 3 forklift trucks are also electric-powered vehicles used for warehouse applications, but, unlike Class 1 vehicles in which the operator is

seated on the vehicle, Class 3 vehicles are designed in most cases for the operator to walk behind them.

Dealers needing replacement parts for the service or repair of Cat® lift trucks manufactured by Jungheinrich AG can purchase them from Caterpillar, and Minnesota Supply purchased such replacement parts from Caterpillar after January 1, 2010.  According to Caterpillar, it has accepted from Minnesota Supply and filled all of Minnesota Supply's orders for replacement parts for service or repair of Cat® lift trucks manufactured by Jungheinrich AG, including orders for replacement parts manufactured by Jungheinrich AG.  *See* ECF No. 1 at ¶ 10.

Jungheinrich AG provides diagnostic computer software for use in the service and repair of forklift trucks that it manufactures.  A Cat® dealer desiring to use the software must sign a license agreement directly with Jungheinrich AG.  Minnesota Supply signed such a software license agreement with Jungheinrich AG and it has used the software in connection with the service and repair of Cat® lift trucks manufactured by Jungheinrich AG.  Caterpillar alleges that it "has at no time refused to give Minnesota Supply access to the software, and it has at no time disabled the software or interfered with Minnesota Supply's use of the software for service, maintenance, repair or testing of Cat lift trucks manufactured by Jungheinrich AG."  Complaint (ECF No. 1) at ¶ 11.  Caterpillar has from time to time assisted Minnesota Supply in attempting to remedy problems it has experienced with the software.

On October 21, 2010, Minnesota Supply filed a nine-count Verified Complaint for Declaratory, Injunctive and Other Relief against Caterpillar, Jungheinrich Lift Truck Corporation ("Jungheinrich"), and Jungheinrich AG in the United States District Court for the District of

3

Minnesota ("the Minnesota action"). *Minnesota Supply Company v. Mitsubishi Caterpillar Forklift America Inc. et al.*, No. 0:10-cv-04311-SRN -AJB. The complaint in the Minnesota action alleges various contractual, statutory and tort theories against the three defendants.

Count VI of the Complaint in the Minnesota action is against Caterpillar for breach of the Agreement. Minnesota Supply alleges that Caterpillar refused to provide it with (1) "'[p]arts and exchange components' . . . necessary for Minnesota Supply to repair its customer's Caterpillar branded lift trucks" (ECF No. 1-2 at ¶ 149) and (2) "the diagnostic software and hardware necessary for Minnesota Supply to repair and service its customers' Caterpillar branded lift trucks" (*id.* at ¶ 150). Count IX is against Caterpillar and Jungheinrich AG for tortious interference with the Distributor Agreement between Minnesota Supply and Jungheinrich.

Minnesota Supply also alleges in the Minnesota action that commencing May 27, 2010, Caterpillar has refused to accept its "orders for Jungheinrich-manufactured parts which are necessary for the repair and maintenance of Caterpillar branded lift trucks" ((ECF No. 1-2 at ¶ 47); and that beginning June 9, 2010, Caterpillar has refused to give it "access to diagnostic software that is necessary for Minnesota Supply to service Caterpillar branded lift trucks" (ECF No. 1-2 at ¶ 48). Finally, Minnesota Supply alleges this "refusal to provide the parts and diagnostic software and hardware . . . makes it impossible for Minnesota Supply to service its customers" (ECF No. 1-2 at ¶ 154); and that it has been damaged in an amount in excess of $75,000 as a result of Caterpillar's "material breaches of contract" (ECF No. 1-2 at ¶ 153).

On November 29, 2010, Caterpillar filed a one-count Complaint (ECF No. 1) in this Court. Caterpillar seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that it has not breached the Agreement by refusing or failing to accept orders from Minnesota Supply

4

for parts needed for the service or repair of Jungheinrich AG-manufactured Cat® lift trucks or by refusing to give Minnesota Supply access to diagnostic software necessary for it to service Cat® lift trucks. *Id.* at 5-6.

> The following motions have been filed in the Minnesota action:
>
> Caterpillar's Motion to Dismiss Count VI Pursuant to Rule 12(b)(3) and Count IX Pursuant to Rule 12(b)(6), filed on December 20, 2010;
>
> Minnesota Supply's Motion for Preliminary Injunction, filed on January 11, 2011; and
>
> Jungheinrich's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue [to the United States District Court for the Eastern District of Virginia, Richmond Division] and in Addition Thereto, to Dismiss for Failure to State a Claim, filed on January 14, 2011.

These three motions are scheduled tol be heard on April 22, 2011 by U.S. District Judge Susan Richard Nelson. After the Order setting these motions for a hearing had been entered on the docket, another motion was filed:

> Jungheinrich AG's Motion to Dismiss Counts VIII and IX or, in the Alternative to Dismissal of Count VIII, to Stay Litigation and Compel Arbitration, filed on February 1, 2011.

## II. Analysis

*A. Venue*

Caterpillar argues that venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the contract Minnesota Supply alleges was breached--the Agreement--specifically provides for venue of any action in the state or federal courts of Cuyahoga County, Ohio. Section 29 of the Agreement states that venue of any action pertaining to the Agreement shall be

5

in the U.S. or Ohio courts of Cuyahoga County, Ohio, and that each party waives any and all rights that it may now or hereafter possess to contest venue or choice of law:

> . . . The venue of any action or proceedings pertaining to this agreement shall be the Courts (U.S. or Ohio) of Cuyahoga County, Ohio and each party hereby waives any and all rights it may now or hereinafter possess to contest venue or choice of law.

ECF No. 1-1 at 12.

The Supreme Court and the law of this Circuit has held that "a forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828 (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)).

### B. "First-to-file" Rule

The "first-to-file" rule is a "well-established doctrine that encourages comity among federal courts of equal rank." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (citations omitted). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Id.* (quoting *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 16 Fed.Appx. 433, 437 (6th Cir. 2001). The rule only applies to two cases filed in separate federal courts. *Amsouth Bank v. Dale*, 386 F.3d 763, 791 (6th Cir. 2004). It proceeds from a belief in the general principle that duplicative

litigation by federal district courts should be avoided. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

However, the "first-to-file" rule is not a strict rule and should not be rigidly applied. *Certified Restoration Dry Cleaning Network, LLC*, 511 F.3d at 551 (quoting *Amsouth Bank*, 386 F.3d at 791 n. 8). Accordingly, district courts have discretion to dispense with the "first-to-file" rule where equity so demands. *See Zide*, 16 Fed.Appx. at 437; *see also Certified Restoration Dry Cleaning Network, LLC*, 511 F.3d at 551.

The Court concludes that the court in which the first suit was filed should apply the "first-to-file" rule and should determine whether to retain jurisdiction. *See Cavaliers Operating Co., LLC v. Ticketmaster*, No. 1:07CV2317, 2007 WL 3171584, at *2 (N.D. Ohio Oct. 30, 2007) (O'Malley, J.) (citing *Daimler-Chrysler Corp. v.. General Motors Corp.*, 133 F.Supp.2d 1041, 1042 (N.D.Ohio 2001) (Carr, CJ.); *Wynne v. Commemorative Air Force*, No. 3:06-cv-122, 2006 WL 2486562, at *2 (S.D.Ohio Aug. 28, 2006) (noting that the "majority of courts hold that it is the first-filed court that should apply the first-to-file rule" and collecting cases).

The role of the court in which the second action was filed with respect to the "first-to-file" rule is to: "(1) evaluate the chronology of the actions; and (2) determine whether the parties and issues in the two cases are substantially similar." *Cavaliers Operating Co.*, 2007 WL 3171584, at *3 (citing *Plating Resources, Inc. v. UTI Corp.*, 47 F.Supp.2d 899, 903-904 (N.D.Ohio 1999) (Gwin, J.)).

Because the Minnesota action was filed on October 21, 2010 and the case at bar was filed on November 29, 2010, it is clear that the matter pending in the Northern District of Ohio is the second-filed.

As to the Court's second determination, the Court finds that the parties and issues here are substantially similar to those in the Minnesota action. Although the first-filed action in Minnesota includes two more parties and additional claims that are not raised in the declaratory judgment action before this Court, the claims arise from the same underlying set of facts alleged in the case at bar. The issue in the instant case is whether Caterpillar breached the Agreement by refusing or failing to accept orders from Minnesota Supply for parts needed to service or repair Jungheinrich AG-manufactured Cat® lift trucks or by refusing to give Minnesota Supply access to diagnostic software or hardware necessary for servicing Cat® lift trucks. *See* Discovery Plan (ECF No. 19) at 2. As detailed above, the same matters are at issue in Count VI of the Complaint filed in the Minnesota action, *see* ECF No 1-2 at 31-33. According to Minnesota Supply, the Complaint in the case at bar is a "mirror image" of Count VI in the Minnesota action. ECF No. 10 at 2. The Court concludes that the issues involved in both cases substantially overlap and that the distinctions between the cases with respect to the claims asserted are not sufficient to remove this case from the "first-to-file" framework.

The Court need not, at this time, reach the parties' arguments regarding whether venue is proper in this district because the Court finds that the "first-to-file" rule counsels that the Court stay proceedings in this case.

### III.  Conclusion

For the foregoing reasons, proceedings in the case at bar are stayed until resolution of the motions which are now pending in the United States District Court for the District of Minnesota. The parties shall promptly file a notice with this Court when the issues presented by the motions currently pending in the Minnesota action have been adjudicated.

The CMC set for February 23, 2011 is canceled. This case will be reset for CMC at the convenience of the Court.

IT IS SO ORDERED.

| | |
|---|---|
| February 22, 2011 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |